Samuel A. Schwartz, Esq.  
Nevada Bar No. 10985  
Bryan A. Lindsey, Esq.  
Nevada Bar No. 10662  
The Schwartz Law Firm, Inc.  
6623 Las Vegas Blvd. South, Suite 300  
Las Vegas, Nevada 89119  
Telephone: (702) 385-5544  
Facsimile: (702) 385-2741  
Attorneys for the Debtor  

E-Filed: November 5, 2014

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No. 14-15912-ABL |
| | ) |
| Jeffry S. Life, | ) Chapter 11 |
| | ) |
| Debtor. | ) Hearing Date: November 19, 2014 |
| | ) Hearing Time: 1:30 p.m. |
| | ) |

**OPPOSITION TO THE MOTION FOR RELIEF
FROM STAY TO PROCEED WITH ARBITRATION**

Jeffrey S. Life, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through his counsel of record, The Schwartz Law Firm, Inc., hereby files his opposition (the "**Opposition**") to the Motion (the "**Motion**") of Cenegenics, LLC ("**Cenegenics**") for Relief from Stay to Proceed with Arbitration. In support of this Opposition, the Debtor respectfully states as follows:

**Preliminary Statement**

1. As this Court is aware, there is a pending motion to reject (the "**Rejection Motion**") the Debtor's contracts (in their entirety) with Cenegencis (the "**Cenegenics Contracts**"), including the arbitration provision in the Cenegenics Contracts. In connection with the Rejection Motion, the Debtor submits that cause does not exist to grant relief from the automatic stay because the claims of Cenegenics will be resolved against the Debtor in his bankruptcy case, and in connection with the Rejection Motion.

1

2. In addition, cause does not exist to grant relief from the automatic stay as the facts and circumstances of this case support resolving all claims between the Debtor and Cenegenics in the Debtor's bankruptcy proceeding. Indeed, the real dispute here is between Cenegenics and Dr. Life's medical practice, not the Debtor. Moreover, that dispute is nearly resolved. Accordingly, the Motion should be denied.

### Factual Background

3. Cenegenics makes loose reference to alternative dispute resolution provisions in the Cenegenics Contracts. Specifically, Section 8.3 of the Image Licensing Agreement (the "**ILA**") governs the dispute resolution process of that contract. The section requires election of arbitration, selection of a "Resolver" and then the conducting of the arbitration. ILA, Section 8.3. Cenegenics has not followed these procedures, however, as no arbitration is pending or was pending prepetition.

4. The ILA is specific as to what is subject to arbitration. Arbitration under the ILA applies to termination of the agreement by Dr. Life (Section 8.1) or termination by Cenegenics (Section 8.2). The ILA "dispute resolution process applies only to disputes arising under Section 8." Those disputes only concern whether the ILA can be terminated and do not extend beyond that limited scope.

5. The Management Services Agreement (the "**MSA**") contains two alternative dispute resolution provisions. Section 8.7 of the MSA outlines an arbitration procedure, but by its own terms, only applies to "termination for cause."[1] The termination of the MSA occurred on March 1, 2014 (as found by this Court in its oral ruling on the Debtor's first attempt to reject the ILA), and neither party has initiated arbitration concerning that event.

---

[1] Section 8.11 of the MSA qualifies that "[t]his dispute resolution process applies only to disputes arising under Section 8.4." Section 8.4 of the MSA governs termination for cause.

2

6. The other arbitration provision within the MSA is the "Valuation Process" which is designed to resolve any dispute concerning the amount Cenegenics is required to pay to Dr. Life for his medical practice (the "**PC**") upon termination. Cenegenics has operated the PC since March 1, 2014, without making any payments to Dr. Life or his PC. The valuation process for the PC is nearly completed as follows:

- The PC gave Cenegenics notice of termination on December 26, 2013;
- The MSA terminated on March 1, 2014;
- The PC retained a CPA who opined that the Practice is worth $1,023,000;
- Cenegenics retained a CPA who opined that the Practice has a value of zero;
- The two CPA's met and conferred. Unable to reach an agreement, the two CPA's designated a third CPA, George Swarts, as the Resolver;
- On September 12, 2014, the PC, through counsel, provided both reports to Mr. Swarts and asked him to derive his own valuation number within 30 days (in accordance with Section 8.5(B)(iii) of the MSA); and
- On September 22, 2014, Cenegenics wrote a letter to Mr. Swarts and informed him that he could not proceed "due to the automatic stay."

7. This factual history reveals several key points:

- The Debtor is not a party to the Valuation Process;
- No Claim has been made against the Debtor within the Valuation Proceedings;
- The Valuation Proceedings are in their final stage; and
- Cenegenics is preventing the Valuation Proceedings from concluding by using the Automatic Stay as a shield, to the detriment of the Debtor.

For the reasons set forth herein, Cenegenics Motion should be denied, Mr. Swarts should be allowed to complete his determination of the value of the PC, and Cenegenics should be directed to file a proof of claim in this case.

3

**Legal Argument**

**A.     Cause for Relief Does Not Exist Under Section 362(d)(1)**

8.      Under Section 362(d)(1) of the Bankruptcy Code, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property.  11 U.S.C. § 362(d)(1).  As the party seeking stay relief, Cenegenics must first establish a *prime facie* case that cause exists for relief under Section 362(d)(1) of the Bankruptcy Code.  See United States v. Gould (In re Gould), 401 B.R. 415, 426 (B.A.P. 9th Cir. 2009).  Moreover, "cause" has no clear definition and is determined on a case-by-case basis.  In re Conejo Enterprises, Inc., 96 F.3d 346, 352 (9th Cir. 1996).

9.      Cenegenics has failed to show cause, let alone good cause, for relief from the automatic stay.  "Factors to consider in determining whether the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor; (3) injury to the debtor and other creditors if the stay is modified; (4) injury to the movant if the stay is not modified; and (5) the relative portionality of the harms from modifying or continuing the stay."  In re A Partners, LLC, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006).

10.     None of these above factors favor permitting Cenegenics to secure relief fromk the automatic stay.  In fact, all of these factors favor the Debtor.

11.     Relief from the stay would actually interfere with the bankruptcy. Cenegenics, like any other creditor, can file a proof of claim for their damages due to the Debtor's rejection of the Cenegenics Contracts.  Indeed, forcing the Debtor to divert scarce administrative resources to arbitration would cause great injury to the Debtor.  Arbitration

4

would also be futile in this case due to the pending Rejection Motion, and the fact that Cenegenics' claims against the Debtor can be resolved by the Bankruptcy Court. In addition, the automatic stay would prohibit enforcement of any arbitration award.

12. The time necessary would cause great harm to the Debtor and its estate. There is no indication of when the arbitration may start or conclude, meaning that Cenegenics could be ongoing and resolved while these bankruptcy proceedings move to their conclusion.

13. Moving forward with arbitration will cause the Debtor to incur uncessary expenses to the detriment of his creditors. Indeed, the Debtor would be required to dedicate scarce resources to defend arbitration claims when his efforts would be best focused on these bankruptcy proceedings. In fact, courts refuse to grant relief from the automatic stay to determine the arbitrability of grievance against Chapter 11 debtors because "it would improperly burden the bankruptcy estate to impose upon it the cost of arbitration unnecessarily. In re Valley Kitchens, Inc., 58 B.R. 6, 9-10 (Bankr. S.D. Ohio 1985). Here, the Debtor relates this conclusion to the circumstances of this case. The financial capability of Dr. Life to fund administrative expenses is limited, and the fees for services of an arbitrator would not be a negligible item for him. Indeed, given the nature of the dispute and history between Dr. Life and Cenegenics, the costs to fund arbitration on behalf of the Debtor could be significant.

14. Furthermore, other creditors could be harmed by allowing Cenegenics' demanded arbitration, including the uncertainty of the outcome of the proceedings and the Debtor's potential exposure via Cenegenics' end run of this Court's claims-adjudication process. There will be no injury to Cenegenics is the stay is not modified as it will be

5

permitted to pursue their claims before this Court. In sum, the Debtor will be harmed far more by lifting the stay than Cenegenics.

15. In re Thorpe Insulation, Co., 671 F.3d 1011 (9th Cir. 2012) is on point. In that case, a creditor moved for relief from the stay to compel arbitration based on the debtor's alleged breach of a settlement agreement, which the bankruptcy court denied. As a preliminary matter, the Ninth Circuit held that "a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision" if the arbitration would conflict with the purposes of the bankruptcy code. Id. at 1021. Moreover, Thorpe Insulation held that the purposes of the Bankruptcy Code include "centralization of disputes concerning a debtor's legal obligations" and "protect[ing] creditors and reorganizing debtors from piecemeal litigation." Id. at 1022. The Ninth Circuit continued that "arbitration of a creditor's claims against a debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights, and can delay the confirmation of a plan of reorganization." Id. at 1023.

16. Simply put, the same rationale applies here and the Cenegenics' claims can and should be resolved in the Debtor's bankruptcy case.

**B.    The Sonnax Factors Are Not Applicable to this Matter**

17. Cenegenics lists 12 factors this Court should consider to determine whether to lift the stay to permit litigation to continue in another forum. See Motion, p. 7. Importantly, however, the 12 factors from the Second Circuit in In re Sonnax Indust., Inc., 907 F.2d 1280, 1285 (2nd Cir. 1990) do not apply for parties to proceeding with dispute resolution procedures in a contract, but rather, apply to permit pending litigation to continue in another forum. See In re Smith, 389 B.R. 902 (Bankr. D. Nev. 2008) (stating that the twelve Sonnax

6

factors a court should weigh in determining whether to lift the stay to permit pending litigation to continue in another forum).

18. Here, there is no pending litigation in another forum. Rather, the Cenegenics Contracts list specific dispute resolution procedures, including arbitration. As acknowledged by Cenegenics, however, no mediation or arbitration is currently pending.

19. Notwithstanding the above, the <u>Sonnax</u> factors do not weigh in favor of lifting the automatic stay.

20. (i) <u>Whether the relief will result in a partial or complete resolution of the issues</u>. While Cenegenics argues that arbitration will result in a complete resolution of all the disputes with Dr. Life and his non-debtor related entities, there are separate disputes and claims at hand, and there is no guarantee that arbitration will result in a global solution of all issues. Therefore, arbitration may result in only a partial resolution of the issues, and there is no guarantee there will be a global resolution of all the separate issues at the same time. Moreover, there is no showing by Cenegenics that Mr. Swarts cannot simply issue his decision regarding the value of the PC.

21. (ii) <u>The lack of any connection with or interference with the bankruptcy case</u>. As stated above, arbitration will interfere with Dr. Life's bankruptcy case. He has already filed the Rejection Motion and intends to resolve Cenegenics' claims against him personally in his bankruptcy case. Moreover, the time and expense necessary to participate in the arbitration will cause a significant administrative burden on Dr. Life and his not allow him to focus his limited time and resources on his reorganization.

22. (iii) <u>Whether the foreign proceeding involves the debtor as a fiduciary</u>. The arbitration does not involve the Debtor as a fiduciary. As set forth above, the issue truly

7

relates to the value of the PC, and there is no basis to stop Mr. Swarts from finishing the valuation process under the MSA at this time.

23.    (iv) <u>Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases</u>.  There has been no specialized tribunal to hear the issues in this case, save the 3 certified public accountants that are nearly finished with their work.  Simply put, Cenegenics seeks to participate in arbitration before a neutral arbitrator, where no basis under either the ILA or the MSA exists to pursue arbitration.  The arbitration proceeding is not a "specialized tribunal."

24.    (v) <u>Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation</u>.  Here, the Debtor's insurance carrier has not assumed financial responsibility for defending the litigation.

25.    (vi) <u>Whether the action essentially involves third parties, and the debtor functions only as a bailee of conduit for the goods or proceeds in question</u>.  Here, the Debtor does not function only as a bailee of conduit for the goods or proceeds in question.

26.    (vii) <u>Whether the litigation in another forum would prejudice the interest of other creditors, the creditors' committee and other interested parties</u>.  Proceeding with arbitration in this matter will likely prejudice other creditors, as the Debtor will be forced to devote his time, energy and resources to the arbitration and away from the bankruptcy case, especially when the third party accountant is prepared to issue his decision.  Other creditors will suffer as the Debtor will be forced to use estate resources that could otherwise be available for other creditors.

27.    (viii) <u>Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c)</u>.  Here, no judgment claim would be subject to

8

equitable subordination under Section 510(c).

28. (ix) <u>Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)</u>. Here, the results of the arbitration proceeding would not result in a judicial lien avoidable by the debtor under Section 522(f).

29. (x) <u>The interests of judicial economy and the expeditious and economical determination of litigation for the parties</u>. Proceeding with arbitration in this matter will neither be efficient, expeditious or economical. Indeed, the matter is nearly resolved with the work to be finished by Mr. Swartz. Conversely, arbitration would cause the Debtor to devote significant time, expense and estate resources away from his Chapter 11 case. Moreover, the arbitration process would start from scratch and there is no time table for when it would be resolved. Simply put, proceeding with arbitration does not promote judicial economy.

30. (xi) <u>Whether the foreign proceedings have progressed to the point where the parties are prepared for trial</u>. In this case, the arbitration proceeding has not even started, let alone progressed to a point where the parties are prepared for trial.

31. (xii) <u>The impact of the stay on the parties and the "balance of hurt."</u> As set forth above, the Debtor will suffer significant harm in having to devote time and resources defending claims in arbitration when the same can be resolved in the bankruptcy case. Moreover, there is no guarantee that the separate issues involving the Debtor's non-debtor entities will be resolved in one arbitration proceeding. Moreover, Cenegenics will not be harmed in having to prosecute its claims through the Debtor's bankruptcy case like every other creditor.

32. As set forth above, nearly all of the above-factors weigh against granting relief from the automatic stay to proceed with arbitration as Cenegenics requests.

Accordingly, Cenegenics has not established that "cause" exists to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

**C.     A Waiver of the 14-Day Stay Is Not Warranted**

33.     A waiver of the 14-day stay is only appropriate when there is a showing of cause.  Here, Cenegenics simply requests a waiver of the 14-day, but unfortunately, such statement is not "cause" for a waiver of the 14-day stay.  Thus, if the Court determines to grant relief from the automatic stay, the 14-day stay under Bankruptcy Rule 4001(a)(3) should apply.

WHEREFORE, the Debtor respectfully requests that (a) the Motion be denied in its entirety, (b) Mr. Swarts be authorized to complete his valuation of the PC, and (c) such other relief as the Court deems just or proper.

Dated this 5th day of November, 2014.

Respectfully Submitted,

/s/Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

# CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was sent ELECTRONICALLY on November 5, 2014, to the following:

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

JASON ELLIS PHOTOGRAPHY
jasonellisphoto@yahoo.com

JASON ELLIS
jasonellisphoto@yahoo.com

ERIK W. FOX on behalf of Debtor JEFFRY S. LIFE
EFOX@MACLAW.COM, HBENEDICT@MACLAW.COM

TIMOTHY A LUKAS on behalf of Creditor CENEGENICS, LLC
ecflukast@hollandhart.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11
edward.m.mcdonald@usdoj.gov

JOSEPH G. WENT on behalf of Creditor CENEGENICS, LLC
JGWent@hollandhart.com, agstajkowski@hollandhart.com

/s/Christy L. Cahall
    Christy L. Cahall